1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11  GLENN EDWIN CLAY,                    )  Civil No. 11cv01170 AJB (RBB)
                                         )
12            Plaintiff,                 )  **REPORT AND RECOMMENDATION**
                                         )  **GRANTING IN PART AND DENYING**
13  v.                                   )  **IN PART DEFENDANTS' MOTION TO**
                                         )  **DISMISS PLAINTIFF'S COMPLAINT**
14  DENISE LANKFORD, LT. SAVALA,         )  **[ECF NO. 5]**
    CARLOS RAMOS, MARK GOMES, M.         )
15  HAWTHORNE, SILVA GARCIA,             )
                                         )
16            Defendants.                )
    _____)

17

18       On April 12, 2011, Plaintiff Glenn Clay filed a complaint in

19  the Superior Court for the County of San Diego, pursuant to 28

20  U.S.C. § 1983.  (Notice Removal Attach. #2 Compl. 2, 69, ECF No.

    1.)  On May 27, 2011, Defendants filed a Notice of Removal of
21
    Action on the basis of federal question jurisdiction, along with
22
    the summons, the Plaintiff's Complaint, fee waiver documents, and
23
    Court Records Request [ECF No. 1].[1]  On May 31, 2011, Defendants
24
    filed an addendum to their Notice of Removal [ECF No. 2].
25

26

27  _____

28       [1]  Because the Notice of Removal is not consecutively
    paginated, the Court will cite to it using the page numbers
    assigned by the electronic case filing system.

1    The events giving rise to this suit occurred while Clay was
2 incarcerated at R.J. Donovan Correctional Facility ("Donovan") in
3 San Diego, California.  (<u>Id.</u> at 2-3.)  Plaintiff alleges the
4 Defendants, correctional facility officials, violated his First,
5 Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights
6 as well as state negligence standards by improperly terminating him
7 from his position as the "Lead Man" forklift operator at the
8 Donovan "Minimum Support Warehouse" and by refusing to reinstate
9 him.  (<u>Id.</u> at 2, 5-7, 9.)

10    On June 3, 2011, Defendants Savala, Gomes, Ramos, Lankford,
11 and Garcia filed a Motion to Dismiss the Complaint with an attached
12 Memorandum of Points and Authorities [ECF No. 5].[2]  Defendants
13 Lankford, Ramos, and Gomes assert counts one, three, and four
14 against them, respectively, should be dismissed because they are
15 barred by the statute of limitations.  (Defs' Mot. Dismiss Attach.
16 #1 Mem. P. & A. 1, ECF No. 5)  Defendant Savala contends that the
17 claims against him in count two should be dismissed on the grounds
18 that Clay fails to state a claim, and Savala is entitled to
19 qualified immunity.  (<u>Id.</u> at 1-3.)  Chief Deputy Warden Garcia
20 likewise argues that Clay's claims against her in count six should
21 be dismissed because Plaintiff does not state a claim, and Garcia

22 _____

23    [2]  The Defendants maintain that as of June 3, 2011, Defendant
Hawthorne had not been served.  (Mot. Dismiss Attach. #1 Mem. P. &
24 A. 1, ECF No. 5.)  A plaintiff has 120 days after filing the
complaint to serve each defendant.  Fed. R. Civ. P. 4(m); S.D. Cal.
25 Civ. R. 4.1.  Clay's Complaint was filed on April 12, 2010.
(Notice Removal Attach. #2 Compl. 2, ECF No. 1.)  Without an
26 explanation from Plaintiff excusing his failure to comply with
Federal Rule of Civil Procedure 4(m), the district court should
27 **DISMISS** Hawthorne sua sponte and without prejudice.  Fed. R. Civ.
P. 4(m); S.D. Cal. Civ. R. 4.1; <u>Hicks v. Evans</u>, No. C 08-1146 SI
28 (pr), 2011 U.S. Dist. LEXIS 104457, at *1 (N.D. Cal. Sept. 15,
2011).

11cv01170 AJB (RBB)

is entitled to qualified immunity.  (<u>Id.</u> at 5.)  Lastly, all Defendants move to dismiss Plaintiff's state negligence claims for failure to comply with the Government Tort Claims Act.  (<u>Id.</u> at 15-16.)  Defendants Savala and Garcia additionally assert the defense of discretionary immunity in response to Clay's state negligence claims.  (<u>Id.</u> at 16.)

To date, the Plaintiff has not opposed Defendants' Motion. Although the failure to oppose a motion may constitute consent to granting the motion, the Court will analyze the merits of the Defendants' Motion to Dismiss.  <u>See</u> S.D. Cal. Civ. R. 7.1(f)(3)(c). The Court has reviewed the Complaint and Defendants' Motion to Dismiss and attachment.  For the reasons discussed below, the district court should **GRANT in part** and **DENY in part** Defendants' Motion.

## I.   FACTUAL BACKGROUND

The following facts are asserted on the face of the Complaint or are contained in documents attached to the Complaint.  <u>Amtac Mortg. Corp. v. Arizona Mall of Tempe, Inc.</u>, 583 F.2d 426, 430 (9th Cir. 1978) (stating that documents attached to the complaint may be considered when ruling on a motion to dismiss); <u>see Schneider v. Cal. Dep't of Corr.</u>, 151 F.3d 1194, 1197 (9th Cir. 1998); <u>see also Quinn v. Ocwen Fed. Bank</u>, 470 F.3d 1240, 1244 (8th Cir. 2006) (finding that the court may use exhibits attached to the complaint for "all purposes").

Clay alleges that in August 2005, he began working in the Developmentally Disabled Program, a rehabilitation program at Donovan.  (Notice Removal Attach. #2 Compl. 5, ECF No. 1; Addendum Removal 4, ECF No. 2.)  Plaintiff worked as a forklift operator in

the food department of the warehouse.  (<u>Id.</u> at 5, 77.)  He was employed as "Lead Man" and was directly supervised by Defendant Denise Lankford.  (Notice Removal Attach. #2 Compl. 5, ECF No. 1.) Clay argues that before Lankford became the supervisor of the food department, Plaintiff's prior supervisor had warned Clay that Lankford was racist and would fire Plaintiff at the "first opportunity."  (<u>Id.</u> at 72.)

On the afternoon of March 27, 2007, while lowering a pallet in the warehouse with his forklift, the Plaintiff struck an overhead water pipe.  (<u>Id.</u> at 72, 77.)  As a result, the pipe burst and flooded the warehouse floor.  (<u>Id.</u> at 77.)  Clay submits that in response, Defendant Lankford wrote up a Rules Violation Report for Clay's destruction of state property pursuant to section 3011 of the California Code of Regulations, and Lankford attributed the accident to Plaintiff driving the forklift too fast and with a "lack of attention to safety."  (<u>Id.</u> at 5-6, 77.)  The Plaintiff states that Lankford requested and recommended that Clay be "immediately removed from his present job assignment."  (<u>Id.</u> at 77.)  Clay contends that he was told he was "fired" from the food department, so after the accident, Clay took another job as a forklift operator in the laundry department of the warehouse.  (<u>Id.</u> at 19, 57.)

A rules violation hearing commenced on April 19, 2007, before the Senior Hearing Officer, Defendant Lieutenant Savala.  (<u>Id.</u>) Clay argues that he appeared at the hearing, but it was postponed pending witness availability.  (<u>Id.</u>)  Lieutenant Savala reconvened the hearing the following day.  (<u>Id.</u>)  The Plaintiff again appeared

1   at the hearing and entered a plea to the charges.  (<u>Id.</u>)[3]  The

2   Plaintiff maintains that his witnesses appeared telephonically and

3   that Savala relayed Clay's questions to the witnesses.  (<u>Id.</u> at

4   11.)

5        Defendant Mark Gomes, the warehouse manager, and "Mr.

6   Manning," a Material and Store Supervisor II in the laundry

7   department, testified on Plaintiff's behalf.  (<u>See</u> <u>id.</u> at 11-13,

8   77.)  Clay asked Defendant Gomes, through the hearing officer, if

9   Gomes had ever informed the inmates and staff in the warehouse

10  about a department policy that workers would not be fired for

11  accidents if they informed the staff.  (<u>Id.</u> at 33, 77-78.)

12  Defendant Gomes replied, "No."  (<u>Id.</u> at 77-78.)  Gomes further

13  testified that he had no knowledge of prior complaints or incidents

14  involving the Plaintiff operating the forklift unsafely.  (<u>Id.</u> at

15  78.)  Finally, Defendant Gomes stated that the rules violation did

16  not warrant Clay's termination as a forklift operator.  (<u>Id.</u>)

17       Next, Plaintiff states that his supervisor, Manning, confirmed

18  that he was supervising Plaintiff at the time of the accident, that

19  it was indeed an accident, and that Manning had never heard of Clay

20  operating the forklift unsafely.  (<u>Id.</u>)  The Plaintiff maintains

21  that in light of the testimony by Manning and Gomes and in

22  "accordance with progressive discipline," the senior hearing

23  officer reduced Clay's offense from a CDCR-115 Rules Violation

24  Report to a less-serious CDCR-128A general chrono report.  (<u>Id.</u> at

25  78.)  Defendant Savala determined that Clay should be reinstated to

26

27       [3]  Although the typeface notes on the prison rules violation
    report indicate that Clay entered a "guilty" plea, the word "not"
28  was handwritten immediately preceding the word "guilty" on the page
    in the Plaintiff's exhibit.  (<u>Id.</u>)

1   his former position.  (Id. at 56.)  Following this ruling,

2   Plaintiff states that Defendant Lankford nevertheless prevented

3   Clay from returning to work in the laundry department and denied

4   him reinstatement to his "Lead Man" position.  (Id. at 6.)

5        Plaintiff had submitted an inmate grievance against Lankford

6   on April 3, 2007, for improperly terminating Clay as a forklift

7   operator.  (Id. at 70.)  The grievance was denied at the informal

8   level on May 15, 2007.  (Id.)  Plaintiff contends that while his

9   grievances were proceeding, he accepted employment in the laundry

10  department of the warehouse to maintain his grade as a forklift

11  worker and to gain work experience.  (Id. at 57.)

12       On June 18, 2007, Defendant Lankford submitted a general

13  chrono report requesting that Plaintiff be removed from his job

14  assignment in the clothing department at the minimum support

15  facility and reassigned elsewhere.  (Id. at 102.)  Lankford

16  indicated that she filed the report out of concern for her safety

17  because Clay frequently entered her area since his reassignment,

18  glared at her, and made inflammatory comments.  (Id. at 102.)

19  According to Lankford, Plaintiff's conduct created a hostile and

20  inappropriate work environment for her.  (Id.)  The Plaintiff

21  contends that Lankford's chrono resulted in his "permanent removal

22  from the Support Warehouse."  (Id. at 7.)  After submitting the

23  chrono, Lankford hired a Caucasian inmate to occupy Plaintiff's

24  former position.  (Id.)  Clay maintains that Lankford discriminated

25  on the basis of race because she ultimately hired an "all White"

26  work crew.  (See id. at 8.)

27       Plaintiff appealed his grievance to the first formal level of

28  review on June 19, 2007.  (Id. at 70.)  Defendant Gomes authored

6

1    the first-level response form denying Plaintiff's appeal on August

2    15, 2007.  (Id. at 71.)  Gomes cited staff safety, particularly

3    Lankford's safety, as his chief concern and stated that Clay was

4    being reassigned to another department.  (Id.)  On August 20, 2007,

5    Associate Warden of Business Services, Mardelouis Hawthorne,

6    interviewed Plaintiff regarding his complaints against Lankford and

7    discussed the reasons that Plaintiff's appeal was denied.  (Id. at

8    71, 88.)

9        On October 12, 2007, Defendant Garcia denied Plaintiff's

10   appeal at the second level.  (Id. at 71, 105-06.)  Garcia

11   emphasized the monetary loss to the state that was caused by

12   Plaintiff's accident and his unsafe operation of the forklift

13   despite prior counseling.  (Id. at 105.)  Clay's subsequent appeal

14   to the director's level of review was denied on March 14, 2008.

15   (Id. at 71.)

16       In count one, Plaintiff maintains that Defendant Lankford

17   violated his rights to due process, equal protection, freedom of

18   association, and freedom from cruel and unusual punishment.  (Id.

19   at 5.)  Clay insists that Lankford racially discriminated and

20   conspired against him, violated federal civil procedure, and was

21   negligent.  (Id.)  Lankford is alleged to have engaged in racial

22   discrimination by causing Clay's termination and by hiring a

23   Caucasian inmate to replace him to create an "all White" workforce.

24   (Id. at 8.)  Also, Plaintiff asserts Lankford's general chrono was

25   submitted in retaliation for Plaintiff's grievance against her.

26   (Id. at 7.)  He further alleges that Lankford's chrono was racially

27   motivated.  (Id.)

28

1    In count two, Savala is claimed to have racially discriminated
2    and conspired against Clay, violated federal civil procedure, and
3    acted negligently.  (<u>Id.</u> at 11.)  Plaintiff argues that Savala
4    violated his rights to due process, equal protection, freedom of
5    association, freedom of speech, and freedom from cruel and unusual
6    punishment.  (<u>Id.</u>)  Clay complains that Savala unnecessarily
7    postponed the rules violation hearing, failed to stop the hearing
8    at the required intervals, and prevented Plaintiff from
9    interviewing witnesses in person.  (<u>Id.</u> at 11-15.)

10   The Plaintiff argues in count three that Defendant Ramos, the
11   assistant warehouse manager on duty the day of the fork lift
12   accident, violated Clay's rights to due process, equal protection,
13   freedom of association, freedom of speech, and freedom from cruel
14   and unusual punishment.  (<u>Id.</u> at 17.)  Ramos is said to have
15   racially discriminated and conspired against Plaintiff, violated
16   federal civil procedure, and was negligent.  (<u>Id.</u> at 17.)  Also,
17   Clay appears to contend that Ramos is liable as Lankford's
18   supervisor for failing to use his authority to reinstate Plaintiff
19   to his job in the warehouse.  (<u>See</u> <u>id.</u> at 22.)

20   Next, Clay complains in count four that Defendant Gomes
21   violated his rights to due process, equal protection, freedom of
22   association, freedom of speech, and freedom from cruel and unusual
23   punishment.  (<u>Id.</u> at 29.)  Gomes also racially discriminated and
24   conspired against Plaintiff, violated federal civil procedure, and
25   acted negligently.  (<u>Id.</u>)  As a supervisor, Defendant Gomes should
26   have overruled his subordinates and reinstated Plaintiff to his
27   position as a forklift operator.  (<u>Id.</u> at 32.)  Clay maintains that
28   Gomes lied while testifying at Plaintiff's disciplinary hearing.

1  (Id. at 33.)  Finally, Plaintiff urges that the prison policy

2  enabling a staff member to displace an inmate from his job

3  assignment by submitting a chrono alleging safety concerns is

4  misused to racially discriminate.  (Id. at 36.)

5       Plaintiff advances count five against Hawthorne for failing to

6  exercise her supervisory authority.  (Id. at 48-49.)  In addition,

7  Clay contends that Hawthorne should have conducted the interview

8  with Plaintiff in person rather than telephonically.  (Id. at 43.)

9  The Defendant also should have been aware of the racial

10 discrimination occurring among staff within the CDCR and at

11 Donovan.  (Id. at 46-47.)  As noted previously, Defendant Hawthorne

12 has not been served in accordance with Rule 4(m) of the Federal

13 Rules of Civil Procedure and should be dismissed.

14      Lastly, in count six, Garcia is alleged to have violated

15 Clay's rights to due process, equal protection, freedom of

16 association, freedom of speech, and freedom from cruel and unusual

17 punishment.  (Id. at 55.)  Plaintiff argues that the Defendant

18 racially discriminated and conspired against him, violated civil

19 procedure, and was negligent.  (Id.)  Clay charges the chief deputy

20 warden with being aware of her subordinates' discriminatory

21 motivations behind their acts.  (Id. at 55-66.)

22                    **II.  APPLICABLE LEGAL STANDARDS**

23 **A.   Motions to Dismiss for Failure to State a Claim**

24      A motion to dismiss for failure to state a claim pursuant to

25 Federal Rule of Civil Procedure 12(b)(6) tests the legal

26 sufficiency of the claims in the complaint.  See Davis v. Monroe

27 County Bd. of Educ., 526 U.S. 629, 633 (1999).  "The old formula --

28 that the complaint must not be dismissed unless it is beyond doubt

1   without merit -- was discarded by the <u>Bell Atlantic</u> decision [<u>Bell</u>

2   <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007)]." <u>Limestone</u>

3   <u>Dev. Corp. v. Vill. of Lemont</u>, 520 F.3d 797, 803 (7th Cir. 2008).

4   A complaint must be dismissed if it does not contain "enough

5   facts to state a claim to relief that is plausible on its face."

6   <u>Bell Atl. Corp.</u>, 550 U.S. at 570.  "A claim has facial plausibility

7   when the plaintiff pleads factual content that allows the court to

8   draw the reasonable inference that the defendant is liable for the

9   misconduct alleged." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct.

10  1937, 1949 (2009).  The court must accept as true all material

11  allegations in the complaint, as well as reasonable inferences to

12  be drawn from them, and must construe the complaint in the light

13  most favorable to the plaintiff.  <u>Cholla Ready Mix, Inc. v. Civish</u>,

14  382 F.3d 969, 973 (9th Cir. 2004) (citing <u>Karam v. City of Burbank</u>,

15  352 F.3d 1188, 1192 (9th Cir. 2003)); <u>Parks Sch. of Bus., Inc. v.</u>

16  <u>Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995); <u>N.L. Indus., Inc. v.</u>

17  <u>Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

18  The court does not look at whether the plaintiff will

19  "ultimately prevail but whether the claimant is entitled to offer

20  evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232,

21  236 (1974); <u>see</u> <u>Bell Atl. Corp.</u>, 550 U.S. at 563 n.8.  A dismissal

22  under Federal Rule of Civil Procedure 12(b)(6) is generally proper

23  only where there "is no cognizable legal theory or an absence of

24  sufficient facts alleged to support a cognizable legal theory."

25  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001) (citing

26  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

27  1988)).

28

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff."  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.") "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside of the pleadings.  Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  Parks Sch. of Bus., Inc, 51 F.3d at

1    1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir.

2    1980)).   The court may also consider documents "'whose contents are

3    alleged in a complaint and whose authenticity no party questions,

4    but which are not physically attached to the [plaintiff's]

5    pleading.'"   Sunrize Staging, Inc. v. Ovation Dev. Corp., 241 F.

6    App'x 363, 365 (9th Cir. 2007) (quoting Janas v. McCracken (In re

7    Silicon Graphics Inc. Sec. Litig.), 183 F.3d 970, 986 (9th Cir.

8    1999)) (alteration in original); see Stone v. Writer's Guild of Am.

9    W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

10   **B.    Standards Applicable to Pro Se Litigants**

11         Where a plaintiff appears in propria persona in a civil rights

12   case, the court must construe the pleadings liberally and afford

13   the plaintiff any benefit of the doubt.   Karim-Panahi v. Los

14   Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).   The rule

15   of liberal construction is "particularly important in civil rights

16   cases."   Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

17   In giving liberal interpretation to a pro se civil rights

18   complaint, courts may not "supply essential elements of claims that

19   were not initially pled."   Ivey v. Bd. of Regents of the Univ. of

20   Alaska, 673 F.2d 266, 268 (9th Cir. 1982).   "Vague and conclusory

21   allegations of official participation in civil rights violations

22   are not sufficient to withstand a motion to dismiss."   Id.; see

23   also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir.

24   1984) (finding conclusory allegations unsupported by facts

25   insufficient to state a claim under § 1983).   "The plaintiff must

26   allege with at least some degree of particularity overt acts which

27   defendants engaged in that support the plaintiff's claim."   Jones,

28   733 F.2d at 649 (internal quotation omitted).

1   Nevertheless, the Court must give a pro se litigant leave to

2   amend his complaint "unless it determines that the pleading could

3   not possibly be cured by the allegation of other facts." Lopez v.

4   Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Doe v. United

5   States, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a pro se

6   civil rights complaint may be dismissed, the court must provide the

7   plaintiff with a statement of the complaint's deficiencies. Karim-

8   Panahi, 839 F.2d at 623-24.  But where amendment of a pro se

9   litigant's complaint would be futile, denial of leave to amend is

10   appropriate. See James v. Giles, 221 F.3d 1074, 1077 (9th Cir.

11   2000).

12   **C.   Stating a Claim Under 42 U.S.C. § 1983**

13   To state a claim under § 1983, the plaintiff must allege facts

14   sufficient to show (1) a person acting "under color of state law"

15   committed the conduct at issue, and (2) the conduct deprived the

16   plaintiff of some right, privilege, or immunity protected by the

17   Constitution or laws of the United States.  42 U.S.C.A. § 1983

18   (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th

19   Cir. 1986).

20   These guidelines apply to the Defendants' Motion to Dismiss.

21   **III.   DEFENDANTS' MOTION TO DISMISS**

22   **A.   Defendants Lankford, Ramos, and Gomes**

23   These Defendants briefly contend that counts one, three, and

24   four against them should be dismissed because the Plaintiff did not

25   file his Complaint within the statute of limitations.  (Mot.

26   Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 5.)  Defendants argue

27   that the statute of limitations for § 1983 claims is borrowed from

28   the analogous California statute for personal injury lawsuits,

which is two years from the date of the incident. (_Id._ (citing _Silva v. Crain_, 169 F.3d 608, 610 (9th Cir. 1999); Cal. Code. Civ. Proc. § 335.1 (West 2006).) California Code of Civil Procedure section 352.1(a) provides that the statute of limitations is tolled during a prisoner's incarceration, not to exceed two years. (_Id._); Cal. Code Civ. Proc. § 352.1(a) (West 2006). Lankford, Ramos, and Gomes maintain that Clay's allegations against them in counts one, three, and four arise from events that occurred on March 28, 2007. (Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 5.) Thus, Plaintiff had at most four years, until March 28, 2011, to file a lawsuit against these Defendants. (_Id._) They conclude that the statute of limitations bars Clay's claims because he waited until April 12, 2011, to file his Complaint. (_Id._)

Section 1983 does not explicitly contain a statute of limitations. _Wallace v. Kato_, 549 U.S. 384, 387 (2007). Indeed, federal courts typically apply the personal injury limitation period and applicable tolling statutes of the state in which they sit. _Hardin v. Straub_, 490 U.S. 536, 539 (1989); _Douglas v. Noelle_, 567 F.3d 1103, 1109 (9th Cir. 2009); _Silva v. Crain_, 169 F.3d at 610. Nonetheless, "the accrual date of a § 1983 cause of action is a question of federal law that is _not_ resolved by reference to state law." _Wallace_, 549 U.S. at 388. "Under federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." _Douglas_, 567 F.3d at 1109 (citing _Johnson v. California_, 207 F.3d 650, 653 (9th Cir. 2000)). This occurs "when the plaintiff has 'a complete and present cause of action.'" _Wallace_, 549 U.S. at 388 (quoting _Bay_

1  <u>Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of</u>
2  <u>Cal.</u>, 522 U.S. 192, 201 (1997)).

3      Where a plaintiff "alleges a number of discrete acts . . . ,
4  each of which allegedly violated [the plaintiff's] constitutional
5  rights[,]" claims based on acts that occurred beyond the statute of
6  limitations period are time-barred.  <u>Carpinteria Valley Farms, Ltd.</u>
7  <u>v. County of Santa Barbara</u>, 344 F.3d 822, 829 (9th Cir. 2003)
8  (affirming dismissal of plaintiff's time-barred claims that were
9  related to his timely-filed claims in a § 1983 action); <u>see also</u>
10 <u>Rivas v. Cal. Franchise Tax Bd.</u>, 619 F. Supp. 2d 994, 1002 (E.D.
11 Cal. 2008) (refusing to apply continuing violation theory because
12 defendants' discrete acts during an ongoing investigation gave rise
13 to independent, actionable claims).  A plaintiff may use the time-
14 barred acts, however, "as evidence to establish motive and to put
15 his timely-filed claims in context." <u>Carpinteria Valley Farms</u>, 344
16 F.3d at 829; <u>Rivas</u>, 619 F. Supp. 2d at 1002.  This principle
17 applies to alleged acts of racial discrimination "even when they
18 are related to acts alleged in timely filed charges.  Each discrete
19 discriminatory act starts a new clock for filing charges alleging
20 that act." <u>AMTRAK v. Morgan</u>, 536 U.S. 101, 113 (2002).

21     In California, the statute of limitations for personal injury
22 claims is two years, which can be tolled for up to two years during
23 a prisoner's incarceration.  Cal. Code Civ. Proc. §§ 335.1,
24 352.1(a).  The Ninth Circuit has held that "'actual, uninterrupted
25 incarceration is the touchstone' for applying California's tolling
26 provision for the disability of imprisonment." <u>Jones v. Blanas</u>,
27 393 F.3d 918, 928 (9th Cir. 2004) (quoting <u>Elliott v. City of Union</u>
28 <u>City</u>, 25 F.3d 800, 803 (9th Cir. 1994)); <u>see also</u> <u>King v. Fresno</u>

15

1   <u>Police Officers</u>, No. CV F 07-1078 LJO DLB, 2008 U.S. Dist. LEXIS

2   27035, at *10 (E.D. Cal. Mar. 26, 2008) (concluding that plaintiff

3   was not entitled to tolling because he was not continuously

4   incarcerated for the entire two-year period after the accrual of

5   his cause of action).  "It is defendant's burden to prove that

6   plaintiff filed his claims after the expiration of the statute of

7   limitations, but it is plaintiff's burden to show he is entitled to

8   equitable tolling."  <u>Sumahit v. Parker</u>, No. CIV S-03-2605 FCD KJM

9   P, 2009 U.S. Dist. LEXIS 78973, at *5-6 (E.D. Cal. Sept. 3, 2009)

10  (discussing the defendant's burden in the section 352.1 context).

11      **1.  Count One:  Defendant Lankford**

12      Clay alleges that Defendant Lankford violated his right to

13  equal protection by removing Plaintiff from his job in Lankford's

14  department and replacing him with a Caucasian inmate.  (Notice

15  Removal Attach. #2 Compl. 5-8, 57, ECF No. 1.)  Plaintiff further

16  contends that Defendant infringed his right to freedom of speech by

17  submitting a false general chrono in retaliation for Clay's

18  decision to file an inmate appeal against Lankford.  (<u>Id.</u> at 7.)

19      Although Plaintiff alleges that Defendant Lankford violated

20  his rights on March 28, 2007, Lankford's actions occurred on

21  several different dates.  (<u>Id.</u> at 2, 7, 72.)  Clay's forklift

22  accident took place on March 27, 2007, which resulted in his

23  initial removal as well as Lankford's filing of a rules violation

24  report.  (<u>Id.</u> at 72, 75.)  Defendant's refusal to allow Clay to

25  return work after the disciplinary hearing necessarily occurred

26  sometime after April 20, 2007.  (<u>Id.</u> at 77-78.)  It was not until

27  June 18, 2007, that Lankford filed the general chrono report

28  complaining of Clay's hostile and angry demeanor, which resulted in

1    Clay's ultimate removal from the warehouse.  (Id. at 102.)  These

2    allegations constitute separate, discrete events.  See Carpinteria

3    Valley Farms, 344 F.3d at 829 (applying the discrete acts

4    framework).

5        Defendant Lankford has carried her burden of establishing that

6    the statute of limitations bars claims based on Clay's initial

7    March 27, 2007 removal from his position in the food department and

8    the March 27, 2007 rules violation report.  Because Plaintiff filed

9    his Complaint on April 12, 2011, more than four years after March

10   27, 2007, he may not complain of the events on March 27 -- Clay's

11   initial removal from the food department and Lankford's violation

12   report -- as an independent basis for any cause of action against

13   her.  (See Notice Removal Attach. #2 Compl. 2, ECF No. 1.)  The

14   Court recommends that Plaintiff's claims against Defendant Lankford

15   in count one be **DISMISSED** without leave to amend to the extent the

16   allegations derive from Lankford's March 27, 2007 conduct.  See

17   Carpinteria Valley Farms, 344 F.3d at 829; Rivas, 619 F. Supp. 2d

18   at 1002.

19       The Plaintiff's remaining claims against Defendant Lankford

20   concerning her refusal to reinstate him to his job and her filing

21   of a general chrono against Plaintiff, accrued less than four years

22   prior to the April 12, 2011 filing.  (Notice Removal Attach. #2

23   Compl. 2, 77-78, 102, ECF No. 1.)  Yet, it is unclear from the

24   Complaint when Clay was released from state custody and,

25   consequently, whether the California tolling provision applies to

26   his claims.  (See Mot. Dismiss Attach. #1 Mem. P. & A. 1, 7, ECF

27   No. 5); Jones, 393 F.3d at 927 (holding that tolling based on

28   imprisonment does not apply to a civil detainee).  For instance,

17

Clay lists an address other than Donovan on the Complaint, and Defendants acknowledge he is no longer a state prisoner. (Mot. Dismiss Attach. #1 Mem. P. & A. 1, ECF No. 5; Notice Removal Attach. #2 Compl. 2, ECF No. 1.) Lankford has not met her burden of demonstrating that the Plaintiff's remaining claims against her based on these events are beyond the limitations period. <u>See</u> <u>Sumahit</u>, 2009 U.S. Dist. LEXIS 78973, at *5-6. Lankford fails to address these additional event dates altogether in her Motion to Dismiss count one. (<u>See</u> Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 5.)

The allegations that arise from Lankford's refusal to reinstate Plaintiff after the April 20, 2007 hearing and from her June 18, 2007 chrono were not beyond the maximum four-year limitation period. (<u>See</u> Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 5.) Defendant Lankford's Motion to Dismiss count one based on events occurring after April 10, 2007, should be **DENIED**.

**2. Count Three: Defendant Ramos**

Ramos also argues in a cursory manner that the statute of limitations bars Plaintiff's claims against him in count three. (<u>Id.</u>) The Defendant similarly relies on Plaintiff's statement that the violations by Ramos in count three occurred on March 28, 2007. (<u>Id.</u> (citing Notice Removal Attach. #2 Compl. 2, ECF No. 1).)

Plaintiff attempts to establish Ramos's liability by arguing that Defendant Ramos supported his subordinate, Lankford, during Clay's initial removal on March 27, 2007, and failed to reinstate him after the disciplinary hearing on April 20, 2007. (Notice Removal Attach. #2 Compl. 19, ECF No. 1.) Each of these occurrences constitutes a separate and discrete event for the

18

1  purposes of the statute of limitations.  See Carpinteria Valley

2  Farms, 344 F.3d at 829; Rivas, 619 F. Supp. 2d at 1002.

3      The contention that Ramos improperly supported Lankford in

4  removing Clay from his post in the food department on March 27,

5  2007, is time-barred because the Complaint was not filed until

6  April 12, 2011, which is beyond the maximum four year period.  See

7  Cal. Code Civ. Proc. §§ 335.1, 352.1(a).  Ramos's March 27, 2007

8  conduct may not serve as an independent basis for liability.  The

9  district court should **DISMISS** Plaintiff's claim against Ramos in

10  count three without leave to amend to the extent it is predicated

11  on injuries stemming from the Defendant's actions on March 27,

12  2007.

13      The Defendant has not met his burden of asserting that

14  Plaintiff's claims against him accruing after the April 10, 2007

15  disciplinary hearing are time-barred.  (See Mot. Dismiss Attach. #1

16  Mem. P. & A. 7, ECF No. 5 (discussing the March 28, 2007 accrual

17  date only).); see also Sumahit, 2009 U.S. Dist. LEXIS 78973, at

18  *5-6.  The district court should **DENY** Defendant Ramos's Motion to

19  Dismiss count three with regard to injuries derived from Ramos's

20  role in preventing Clay's reinstatement after April 10, 2007.

21      **3.  Count Four:  Defendant Gomes**

22      As with Defendants Lankford and Ramos, Defendant Gomes asserts

23  the statute of limitations as an affirmative defense to Clay's

24  claims against him in count four that accrued on March 28, 2007.

25  (Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 5.)  In the

26  Complaint, Plaintiff maintains that Defendant Gomes violated his

27  constitutional right to equal protection at the rules violation

28  hearing on April 20, 2007, in addition to his supervisory role in

19

1  the initial termination on March 27, 2007.  (Notice Removal Attach.

2  #2 Compl. 77-78, ECF No. 1.)

3      Clay's allegations against Gomes involve similarly separate,

4  discrete acts.  <u>See</u> <u>Carpinteria Valley Farms</u>, 344 F.3d at 829;

5  <u>Rivas</u>, 619 F. Supp. 2d at 1002.  Plaintiff's claims against Gomes

6  that are based on his conduct during the initial removal on March

7  27, 2007, are untimely because the Complaint was not filed within

8  the four-year limitations period.  <u>See</u> Cal. Code Civ. Proc. §

9  352.1(a).  Allegations in count four that derive from Gomes's

10 conduct on this date should be **DISMISSED** without leave to amend.

11     Gomes has failed to meet his burden with respect to the

12 contentions concerning his testimony at the disciplinary hearing on

13 April 20, 2007.  (<u>See</u> Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF

14 No. 5) (discussing only the March 28, 2007 accrual date); <u>Sumahit</u>,

15 2009 U.S. Dist. LEXIS 78973, at *5-6.  Defendant Gomes's Motion to

16 Dismiss should be **DENIED** with respect to claims arising from the

17 April 20, 2007 disciplinary hearing and later.

18 **B.**  **<u>Defendant Savala</u>**

19     Defendant Savala moves to dismiss the due process violation

20 alleged in count two because Clay fails to state a claim, and

21 Savala is entitled to qualified immunity.  (Mot. Dismiss Attach. #1

22 Mem. P. & A. 7, ECF No. 5.)  Plaintiff contends that Savala

23 violated his Fourteenth Amendment rights by postponing the rules

24 violation hearing, preventing Clay from interviewing witnesses in

25 person, failing to stop the hearing, issuing a disciplinary action,

26 and conspiring with the other Defendants to deny reinstatement.

27 (Notice Removal Attach. #2 Compl. 11-14, ECF No. 1.)

28 //

### 1.  Failure to State a Claim

Defendant acknowledges that Plaintiff asserts that Savala's conduct violated Clay's rights to due process, free speech, equal protection, freedom of association, and constituted racial discrimination, cruel and unusual punishment, a violation of the Federal Rules of Civil Procedure and the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.  (Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF No. 5.)  Savala contends that none of Plaintiff's allegations against him state a claim, yet Defendant focuses on Clay's due process charge because Savala believes it is the only argument with potential merit.  (Id.)  Lieutenant Savala asserts that the Complaint violates the pleading requirements because it does not provide a "short and plain statement of the claim showing that the pleader is entitled to relief" beyond an "unadorned, the-defendant-unlawfully-harmed-me accusation."  (Id. (citing Fed. R. Civ. P. 8(a)(2); Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009)).)

Next, Savala argues that Clay cannot sustain a due process claim because there is no liberty interest that attaches to an inmate's right to work, and the rules violation hearing process did not result in a "typical and significant" change in the conditions of Clay's confinement.  (See id. at 8-9.)  In particular, a prisoner must allege "a dramatic departure from the basic conditions" of his incarceration to state a claim under the Due Process Clause, such as a loss of good-time credits.  (Id. at 8 (quoting Wolff v. McDonnell, 418 U.S. 539 (1974)).)  Savala submits that the Plaintiff cannot meet this burden where he admittedly "bumped an old water pipe with a forklift," which resulted in a

1   hearing reducing the discipline from actual termination to a

2   "write-up" and a recommendation that Clay be reinstated. (Id. at

3   9.) The Defendant concludes that the Fourteenth Amendment due

4   process claims in count two should be dismissed because Plaintiff

5   suffered no actual loss from Savala's actions. (Id.)

6        To properly plead a due process violation, an inmate must

7   allege that the challenged conduct "present[s] the type of

8   atypical, significant deprivation in which a State might

9   conceivably create a liberty interest." Sandin v. Connor, 515 U.S.

10  472, 486 (1995). As an initial matter, prisoners have no federal

11  statutory or constitutional right to employment, although state

12  statutory rights may create a liberty or property interest to which

13  due process may attach. Id. at 480; Meachum v. Fano, 427 U.S. 215,

14  224 (1976) (holding that not every "grievous loss visited upon a

15  person by the State is sufficient to invoke the procedural

16  protections of the Due Process Clause"); Coakley v. Murphy, 884

17  F.2d 1218, 1221 (9th Cir. 1989); Gray v. Hernandez, No. 08-CV-1147-

18  JM(WVG), 2011 U.S. Dist. LEXIS 29163, at *15-16 (S.D. Cal., Mar.

19  22, 2011) ("Whether an inmate loses prison employment for an unjust

20  reason or a just reason, there is no liberty interest in prison

21  employment.").

22       In California, the state obligates able-bodied inmates to

23  work, but it retains discretion to assign and remove prisoners from

24  employment. Gray, 2011 U.S. Dist. LEXIS 29163, at *15-16.

25  Although California enacted a regulation requiring "[e]very able-

26  bodied person committed to the custody of the Secretary of the

27  Department of Corrections and Rehabilitation . . . to work," the

28  Ninth Circuit has stated that inmate labor "is penological, not

1   pecuniary," and "belongs to the institution." See Hale v. Arizona,

2   993 F.2d 1387, 1395 (9th Cir. 1993); see also Cal. Code Regs. tit.

3   15, § 3040(a).

4       Clay has not complained that the alleged procedural defects in

5   the disciplinary hearing — postponing the rules violation hearing,

6   preventing Clay from interviewing witnesses in person, failing to

7   stop the hearing, and issuing a disciplinary action — caused an

8   atypical, significant hardship beyond the ordinary incidents of

9   prison life.  In addition, as no due process right attaches to a

10  prisoner's employment, Clay cannot allege a constitutional injury

11  from the fact of his termination.  See Gray, 2011 U.S. Dist. LEXIS

12  29163, at *15-16.  Although "due process requirements for a prison

13  disciplinary hearing are . . . less demanding than those for

14  criminal prosecution, . . . they are not so lax as to let stand the

15  decision of a biased hearing officer who dishonestly suppresses

16  evidence of innocence."  Edwards v. Balisok, 520 U.S. 641, 647

17  (1997).

18      Here, Plaintiff asserts that Savala discriminated against him

19  and impeded his right to a fair hearing on the rules violation by

20  frustrating his efforts to confront and question his witnesses,

21  failing to stop the hearing, and issuing him a disciplinary general

22  chrono.  (Notice Removal Attach. #2 Compl. 14, ECF No. 1.)  Even

23  so, Clay has not provided specific allegations beyond cursory

24  statements to substantiate the claimed "grave deprivation of his

25  constitutional rights."  (Id.)  Plaintiff's factual allegations,

26  liberally construed, demonstrate that the disciplinary hearing

27  comported with due process requirements.  Savala held the

28  disciplinary hearing, provided Plaintiff with notice, allowed Clay

to call witnesses, and on the basis of the evidence received,
Savala reduced the rules violation to a less-severe general chrono.
(<u>Id.</u> at 11-14); <u>see also</u> <u>Superintendent, Mass. Corr. Inst., Walpole</u>
<u>v. Hill</u>, 472 U.S. 445, 455-56 (1985) (holding that due process is
satisfied if "some evidence" supports the decision by the prison
disciplinary officials).  Savala recommended that Plaintiff be
reinstated to his position as "Lead Man."  (Notice Removal Attach.
#2 Compl. 14, ECF No. 1.)  Clay's contentions are insufficient to
state a claim that Savala's conduct at the hearing subjected
Plaintiff to an atypical or significant hardship.  Accordingly, the
district court should **GRANT** Lieutenant Savala's Motion to Dismiss
Plaintiff's procedural due process claim.  Courts should, however,
grant leave to amend unless "the pleading could not possibly be
cured by the allegation of other facts."  <u>Lopez</u>, 203 F.3d at 1127.

Defendant has only specifically moved to dismiss the due
process claim.  (<u>See</u> Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF
No. 5 ("The only potential claim containing more than naked
assertions is due process.").)  Savala does not substantively
address any of Plaintiff's other claims.  The Defendant does not
discuss the factual allegations contained in count two in the
context of other theories of liability urged by Clay.
Consequently, under Rule 12(b)(6) of the Federal Rules of Civil
Procedure, Savala has not carried his burden of showing that
Plaintiff has failed to "state a claim to relief that is plausible
on its face."  <u>Bell Atlantic</u>, 550 U.S. at 570; <u>see</u> Fed. R. Civ. P.
12(b)(6).  Accordingly, only the due process claim asserted in
count two should be dismissed.
//

**2.  Qualified Immunity**

Next, Lieutenant Savala maintains that he is entitled to qualified immunity because "there is no controlling authority." (Mot. Dismiss Attach. #1 Mem. P. & A. 11, ECF No. 5.)  Also, Savala argues, "[I]t is not beyond debate that it would be unlawful to assess the progressive discipline of a write-up, as opposed to no discipline, in connection with a forklift accident that actually occurred, where the official ruled to reinstate the inmate worker to his position."  (Id.)  Savala further contends that no reasonable official would have known that this was unconstitutional.  (Id.)

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. Al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Hydrick v. Hunter, 449 F.3d 978, 992 (9th Cir. 2006).  It protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

When considering a claim for qualified immunity, courts engage in a two-part inquiry:  Do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct? Delia v. City of Rialto, 621 F.3d 1069, 1074 (9th Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  Courts consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's

conduct violated a constitutional right." <u>Saucier v. Katz</u>, 533
U.S. 194, 201 (2001), <u>overruled on other grounds by Pearson</u>, 555
U.S. 223.  A right is clearly established if the contours of the
right are so clear that a reasonable official would understand that
what he is doing violates that right.  <u>Id.</u> at 202 (quotation
omitted).  This standard ensures that government officials are on
notice of the illegality of their conduct before they are subjected
to suit.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002) (quoting
<u>Saucier</u>, 533 U.S. at 206).  "This is not to say that an official
action is protected by qualified immunity unless the very action in
question has previously been held unlawful . . . ."  <u>Id.</u>

     "[L]ower courts have discretion to decide which of the two
prongs of qualified-immunity analysis to tackle first."  <u>Al-Kidd</u>,
__ U.S. at __, 131 S.Ct. at 2080; <u>Pearson</u>, 555 U.S. at 236; <u>see
also Delia</u>, 621 F.3d at 1075 (citing <u>Brooks v. Seattle</u>, 599 F.3d
1018, 1022 n.7 (9th Cir. 2010); <u>Bull v. City & County of San
Francisco</u>, 595 F.3d 964, 971 (9th Cir. 2010)).  "If the Officers'
actions do not amount to a constitutional violation, the violation
was not clearly established, or their actions reflected a
reasonable mistake about what the law requires, they are entitled
to qualified immunity."  <u>Brooks</u>, 599 F.3d at 1022 (citing
<u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 471 (9th Cir. 2007));
<u>see James v. Rowlands</u>, 606 F.3d 646, 651 (9th Cir. 2010) (quoting
<u>Pearson</u>, 555 U.S. at 232, 236).

     The Court should attempt to resolve this threshold immunity
question at the earliest possible stage in the litigation "before
expending 'scarce judicial resources' to resolve difficult and
novel questions of constitutional or statutory interpretation that

1  will 'have no effect on the outcome of the case.'"   Al-Kidd, __
2  U.S. at __, 131 S.Ct. at 2080 (quoting Pearson, 555 U.S. at 236-
3  37); see also Crawford-El v. Britton, 523 U.S. 574, 598 (1998)
4  (noting that the purpose of resolving immunity issues early is so
5  that officials are not subjected to unnecessary discovery); Hunter
6  v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted).

7       As noted above, the Court has recommended that Plaintiff's due
8  process claim against Savala be dismissed with leave to amend.  Any
9  discussion of qualified immunity is premature until, and if, the
10 Plaintiff amends his Complaint.   See Taylor v. Vt. Dep't of Educ.,
11 313 F.3d 768, 793-94 (2nd Cir. 2002) (explaining that ruling on
12 qualified immunity in the context of a Rule 12(b)(6) motion would
13 be premature because the issue "turns on factual questions that
14 cannot be resolved at this stage of the proceedings[]"); see also
15 Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (stating government
16 officials are shielded from liability if their conduct does not
17 violate a constitutional right that was clearly established).
18 Defendant Savala's Motion to Dismiss the Plaintiff's due process
19 claim against him in count two based on qualified immunity should
20 be **DENIED** without prejudice as premature.

21 **C.    Defendant Garcia**

22      Chief Deputy Warden Garcia moves to dismiss Plaintiff's
23 Fourteenth Amendment claims against her in count six for failure to
24 state a claim and because she is entitled to qualified immunity.
25 (See Mot. Dismiss Attach. #1 Mem. P. & A. 11, ECF No. 5.)
26 //
27 //
28

27

1  **1.  Due Process**

2       **a.  Procedural due process**

3       Garcia moves to dismiss Plaintiff's procedural due process

4  claim against her on the ground that prisoners have no

5  constitutional right to work in prison.  (Mot. Dismiss Attach. #1

6  Mem. P. & A. 12-13, ECF No. 5 (citing Garza v. Miller, 688 F.2d

7  480, 485 (7th Cir. 1982)).)  The Defendant submits that no liberty

8  interest attached to protect Clay's preference for job placement in

9  the minimum support warehouse as opposed to a job in a different

10 department.  (Id. at 13.)

11      To state of cause of action for a violation of procedural due

12 process, an inmate must plead facts demonstrating an "atypical and

13 significant hardship in relation to the ordinary incidents of

14 prison life" caused by the defendant's procedural omissions.

15 Richardson v. Runnels, 594 F.3d 666, 672 (9th Cir. 2010) (quoting

16 Sandin, 515 U.S. at 486); Neal v. Shimoda, 131 F.3d 818 (9th Cir.

17 1997).  The Ninth Circuit has held that prison employment is

18 penological in nature, and prison officials retain discretion in

19 employment practices.  Hale, 993 F.2d at 1395; Gray, 2011 U.S.

20 Dist. LEXIS 29163, at *15-16.

21      Section 1983 of the Civil Rights Act does not authorize a

22 plaintiff to bring a cause of action based on respondeat superior

23 liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692

24 (1978) ("[T]he fact that Congress did specifically provide that A's

25 tort became B's liability if B 'caused' A to subject another to a

26 tort suggests that Congress did not intend § 1983 liability to

27 attach where such causation was absent."); see also Motley v.

28 Parks, 432 F.3d 1072, 1081 (9th Cir. 2005).  State officials are

subject to suit in their personal capacity if "they play an affirmative part in the alleged deprivation of constitutional rights." King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987).  A plaintiff must allege "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation," or that "the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them." Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

"[W]here a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983." Trueman v. State, No. CV 09-2179-PHX-RCB (DKD), 2010 U.S. Dist. LEXIS 67847, at *10-11 (D. Ariz. June 15, 2010) (citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)).  "Only persons who cause or participate in the violations are responsible.  Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." K'Napp v. Adams, No. 1:06-cv-01701-LJO-GSA (PC), 2009 U.S. Dist. LEXIS 38682, at *10-11 (E.D. Cal. May 7, 2009) (quoting George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 1007)).

Clay primarily pleads that Garcia's procedural missteps resulted in Plaintiff not being reinstated to the forklift operator position.  (Notice Removal Attach. #2 Compl. 64, ECF No 1.)  Clay attempts to establish Garcia's liability by arguing that, as a

1  supervisor, Garcia is responsible for the purported procedural

2  defects associated with his disciplinary hearing. (<u>Id.</u> at 59-62.)

3  Also, Plaintiff seeks to hold Defendant liable for denying his

4  inmate grievance. (<u>Id.</u> at 61-62.)

5       Because prisoners have no property interest in their

6  employment, Plaintiff may not maintain a procedural due process

7  claim for the removal from his job. <u>Gray</u>, 2011 U.S. Dist. LEXIS

8  29163, at *15-16. Moreover, Clay has not alleged that Garcia's

9  direct involvement in any procedural defects in the disciplinary

10 hearing or in processing his inmate appeal led to a significant

11 hardship. Plaintiff instead asserts that Garcia became aware of

12 the procedural defects in the disciplinary hearing through Clay's

13 administrative appeal, yet Garcia failed to take corrective action.

14 (Notice Removal Attach. #2 Compl. 59-62, ECF No. 1.) Merely

15 alleging that a prison official knew about a subordinate's past

16 misconduct, however, is insufficient to establish the liability of

17 the supervisor. <u>See</u> <u>K'Napp</u>, 2009 U.S. Dist. LEXIS 38682, at *11.

18 Finally, Clay cannot sustain a procedural due process claim on the

19 basis of Garcia's denial of his grievance because ruling on an

20 appeal did not cause or contribute to the alleged due process

21 violations. <u>Id.</u> at *10-11 ("A guard who stands and watches while

22 another guard beats a prisoner violates the Constitution; a guard

23 who rejects an administrative complaint about a completed act of

24 misconduct does not."); <u>Trueman</u>, 2010 U.S. Dist. LEXIS 67847, at

25 *10-11.

26      Consequently, Plaintiff's procedural due process claim against

27 Defendant Garcia in count two should be **DISMISSED**. Because it is

28

30

1   unclear whether Clay could amend his claim to overcome these

2   deficiencies, he should be given leave to amend.

3                    **b.   Substantive due process**

4        Garcia maintains that if Plaintiff is attempting to allege a

5   substantive due process claim, it should be dismissed because his

6   equal protection cause of action represents the more specific

7   source for the claim against Garcia.  (Mot. Dismiss Attach. #1 Mem.

8   P. & A. 12-13, ECF No. 5.)

9        The Plaintiff may not "double up" on his constitutional claims

10  by advancing a substantive due process claim if "a particular

11  Amendment 'provides an explicit textual source of constitutional

12  protection'" against government misconduct.  <u>Albright v. Oliver</u>,

13  510 U.S. 266, 273 (1994) (Rehnquist, C.J., for plurality) (quoting

14  <u>Graham v. Connor</u>, 490 U.S. 386, 395, (1989)); <u>Ramirez v.</u>

15  <u>Butte-Silver Bow Cnty.</u>, 283 F.3d 985, 992 (9th Cir. 2002) (quoting

16  <u>Graham</u>, 490 U.S. at 394-95).  As the Court notes above, there is no

17  liberty interest in prison employment, but "racial discrimination

18  in the assignment of jobs violates equal protection." <u>Walker</u>, 370

19  F.3d at 973.

20       Clay's equal protection claim against Garcia stems from the

21  same concerns and conduct underlying his due process complaint.

22  (<u>Id.</u>)  To the extent that a substantive due process violation is

23  asserted, the Equal Protection Clause is an explicit textual source

24  for relief.  Consequently, any substantive due process claim

25  against Chief Deputy Warden Garcia in count two should be **DISMISSED**

26  without leave to amend.

27  //

28  //

31                                                    11cv01170 AJB (RBB)

### 2. Equal Protection

Defendant Garcia characterizes Clay's equal protection cause of action against her in count six as a claim based on supervisory liability. (Mot. Dismiss Attach. #1 Mem. P. & A. 13, ECF No. 5.) Garcia asserts that Clay has not alleged Garcia's direct or personal involvement in the discrimination. (Id. at 13.) Defendant argues that Plaintiff must identify the particular overt acts that were committed against Clay due to his membership in a class. (Id. at 13-14.) Mere knowledge of the possibility that racial animosity influenced a staff complaint against the Plaintiff is insufficient to establish liability for Garcia's alleged failure to fully investigate Clay's appeal. (Id. at 14.) Garcia maintains that although the removal of one inmate from his job placement in response to a staff safety complaint might disrupt the ethnic balance in violation of the Work Incentive Program, it does not constitute impermissible discrimination. (Id. at 14-15.)

The Due Process Clause of the Fourteenth Amendment "'does not create a property or liberty interest in prison employment,'" but the Equal Protection Clause does protect prisoners "from invidious discrimination based on race" in employment decisions. Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (quoting Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam)); Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003). Unintentional conduct that may have a disparate impact does not violate the Fourteenth Amendment. Washington v. Davis, 426 U.S. 229, 239 (1976). "[A] plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d

1193, 1194 (9th Cir. 1998).  Protected classes include race,
religion, national origin, and poverty.  <u>Damiano v. Fla. Parole &</u>
<u>Probation Comm'n</u>, 785 F.2d 929, 932-33 (11th Cir. 1986).  But
"neither prisoners nor 'persons convicted of crimes' constitute a
suspect class for equal protection purposes."  <u>United States v.</u>
<u>Whitlock</u>, 639 F.3d 935, 941 (9th Cir. 2011) (citing <u>Glauner v.</u>
<u>Miller</u>, 184 F.3d 1053, 1054 (9th Cir. 1999).

        To state a claim against a supervising official under § 1983,
a plaintiff must allege that the official "personally participated
in the alleged deprivation of constitutional rights; knew of the
violations and failed to act to prevent them; or promulgated or
'implemented a policy so deficient that the policy 'itself is a
repudiation of constitutional rights' and is 'the moving force of
the constitutional violation.'"  <u>K'Napp</u>, 2009 U.S. Dist. LEXIS
38682, at *9 (quoting <u>Hansen</u>, 885 F.2d at 646); <u>see also</u>
<u>Preschooler II</u>, 479 F.3d at 1182.  Further, a plaintiff's complaint
must include facts indicating that the defendant's conduct caused
or contributed to the alleged constitutional deprivations.  <u>K'Napp</u>,
2009 U.S. Dist. LEXIS 38682, at *10-11.  A complaint is deficient
if the only nexus between the defendant and the alleged
constitutional misconduct is the denial of an administrative
grievance and failure to intervene.  <u>See</u> <u>Trueman</u>, 2010 U.S. Dist.
LEXIS 67847, at *10-11.

        Here, Plaintiff does not allege direct participation by
Defendant Garcia in Clay's constitutional deprivation.  Clay does
not assert that Garcia personally acted with racial prejudice or
participated in her subordinates' purported racial bias.  (<u>See</u>
Notice Removal Attach. #2 Compl. 55-62, ECF No. 1.)  Plaintiff

attempts to show that Garcia is liable because she denied his
appeal at the second level of review. (Id. at 60-62, 65.)  Clay
contends that Garcia's denial of the appeal contributed to her
subordinates' wrongdoing because she knew that Plaintiff was
terminated, denied reinstatement, and did not receive a face-to-
face interview during the course of his inmate appeal. (Id. at 55-
62.)  Clay cannot state a claim merely by arguing that Garcia
improperly found that his allegations of racism were unfounded and
that Garcia should have known of and corrected the other
Defendants' purported discriminatory acts.  The Plaintiff has not
alleged facts that demonstrate Garcia's personal involvement in his
alleged constitutional deprivation.  See Barren, 152 F.3d at 1194;
K'Napp, 2009 U.S. Dist. LEXIS 38682, at *11 ("Concluding that a
supervisory defendant knew of events . . . , but did not take
corrective action is not sufficient to show that a specific
defendant's inaction caused an alleged violation.")

Similarly, Plaintiff's suggestion that Garcia's policies
enabled "racial animosity" to influence her staff's disciplinary
and employment actions lacks facts demonstrating Garcia's direct
involvement. (Notice Removal Attach. #2 Compl. 59, ECF No. 1.)  A
plaintiff may maintain a supervisory liability claim for a state
actor's policy initiative without alleging overt personal
participation if the supervisor implements a policy so deficient
that the policy itself is unconstitutional and is "the moving
force" of the violation.  Hansen, 885 F.2d at 646.  Liberally
interpreting the Plaintiff's arguments, Clay submits that the
Donovan policy regarding disciplinary write-ups is susceptible to
the infiltration of prison officials' prejudice. (See Notice

34

Removal Attach. #2 Compl. 59-60, ECF No. 1.)  But Clay has not provided facts showing that Garcia played a specific role in implementing the policy or that alleged the policy itself was unconstitutional.  Accordingly, Clay's equal protection claim against her in count six should be **DISMISSED.**

The district court should give Plaintiff leave to amend his equal protection claim against Garcia to assert facts demonstrating Garcia's direct involvement.

### 3. Qualified Immunity

Finally, Defendant Garcia asserts that she is entitled to qualified immunity.  (Mot. Dismiss Attach. #1 Mem. P. & A. 15, ECF No. 5.)  "[T]here is no controlling authority and it is not beyond debate that it would be unlawful to decline to reinstate an inmate to be supervised by someone who had indicated the inmate made her feel unsafe . . . ."  (Id.)  Defendant argues that Clay was given another job in a different area of the prison, but concedes that staff members could have improper motives for stating that an inmate made them feel unsafe.  (Id.)

 Clay has not adequately alleged that Garcia's conduct amounted to a constitutional violation.  Because the Court has recommended that Plaintiff's procedural due process and equal protection claims in count two be dismissed with leave to amend, a qualified immunity analysis is premature until, and if, Clay amends these charges.  See Taylor, 313 F.3d at 793-94; Proctor v. Felker, No. Civ. S-08-3158-JAM GGH P, 2009 U.S. Dist. LEXIS 114490, at *10 (E.D. Cal. Dec. 9, 2009); see also Harlow, 457 U.S. at 818. Defendant Garcia's Motion to Dismiss the Plaintiff's procedural due

process and equal protection claims against her based on qualified immunity should be **DENIED** without prejudice as premature.

The Court has recommended that any substantive due process claim against Garcia be dismissed without leave to amend.   The qualified immunity inquiry may end here.   Al-Kidd, at __ U.S. __, 131 S.Ct. at 2080; Pearson, 555 U.S. at 236; Saucier, 533 U.S. at 201; James, 606 F.3d at 651.

**E.   Plaintiff's State Negligence Claims**

All Defendants move to dismiss Plaintiff's supplemental state negligence claims against them on the ground that Clay failed to file an administrative claim, as required by the Government Tort Claims Act.   (Mot. Dismiss Attach. #1 Mem. P. & A. 15, ECF No. 5.)

The California Supreme Court has recognized the claim presentment requirement as an "element[] of the plaintiff's cause of action and [a] condition[] precedent to the maintenance of the action."   California v. Superior Court, 32 Cal. 4th 1234, 1240, 90 P.3d 116, 119, 13 Cal. Rptr. 3d 534, 538 (2004) (quoting Williams v. Horvath, 16 Cal. 3d 834, 839, 548 P.2d 1125, 129 Cal. Rptr. 453 (1976)).   A complaint that fails to "allege facts demonstrating or excusing compliance with the claim presentation requirement" fails "to state facts sufficient to constitute a cause of action."   Id. at 1243, 90 P.3d at 122, 113 Cal. Rptr. 3d at 541.

Defendants contend that Clay has not pleaded facts demonstrating his compliance with the claim presentation requirement, rendering his negligence causes of action deficient. (Mot. Dismiss Attach. #1 Mem. P. & A. 15-16, ECF No. 5.)   Plaintiff has not opposed Defendants' Motion, and the Court cannot discern compliance with the claim presentment requirement from Clay's

1    Complaint.  The district court should **GRANT** Defendants' Motion to

2    Dismiss Plaintiff's supplemental state negligence claims with leave

3    to amend to allege whether he complied with the Government Tort

4    Claims Act.

5    **F.    Discretionary Immunity**

6          Defendants Savala and Garcia alternatively assert

7    discretionary immunity as an affirmative defense to Plaintiff's

8    supplemental state negligence claims against them.  (<u>Id.</u> at 16.)

9    They argue that California Government Code section 820.2 immunizes

10   them from state tort liability because their challenged conduct

11   consisted of law enforcement decisions, which are discretionary in

12   nature.  (<u>Id.</u> (citing <u>McCarthy v. Frost</u>, 109 Cal. Rptr. 470, 471-72

13   (Cal. Ct. App. 1973)).)  Defendants further assert that

14   discretionary immunity shields their actions conducting

15   investigations, and acting upon the knowledge they gained.  (<u>Id.</u>

16   (citing <u>Watts v. County of Sacramento</u>, 186 Cal. Rptr. 154, 155

17   (Cal. Ct. App. 1982).)  According to Savala, he used discretion at

18   the disciplinary hearing to determine the method in which witnesses

19   would testify, when to conclude the hearing, to elect to use

20   progressive discipline in his disposition, and to recommend Clay's

21   reinstatement to his job.  (<u>Id.</u>)  Garcia argues that she performed

22   discretionary functions when she reviewed and decided Clay's inmate

23   appeal based on the evidence presented to her in the administrative

24   record.  (<u>Id.</u>)

25         This Court has already recommended that Plaintiff's state

26   negligence claims be dismissed with leave to amend so that Clay may

27   alleged compliance with the Tort Claims Act.  Any analysis

28   regarding Defendants' discretionary immunity defense would be

premature until, and if, Plaintiff amends to allege compliance. For this reason, the Motion to Dismiss the state claims against Savala and Garcia based on discretionary immunity should be **DENIED** without prejudice as premature.

### V. CONCLUSION

The district court should **DISMISS** Defendant Hawthorne from the lawsuit sua sponte for Plaintiff's failure to timely serve Hawthorne in accordance with Federal Rule of Civil Procedure 4(m). Defendants Lankford, Ramos, and Gomes's Motion to Dismiss Plaintiff's first, third, and fourth causes of action against them, respectively, for failing to comply with the statute of limitations should be **GRANTED** in part.  Plaintiff should be given leave to replead those claims against Lankford, Ramos, and Gomes he contends accrued after April 10, 2007.

Defendant Savala's Motion to Dismiss Clay's due process clause allegations again him in count two should be **GRANTED**.  Because it is unclear whether amendment would be futile, Plaintiff should be given leave to amend.  Savala's Motion to Dismiss Plaintiff's due process claims based on qualified immunity should be **DENIED** without prejudice as premature.

As to Defendant Garcia, her Motion to Dismiss the procedure due process claims in count six should be **GRANTED** with leave to amend.  Her request that any substantive due process allegations in count six be dismissed should be **GRANTED** without leave to amend. Garcia's Motion to Dismiss Clay's equal protection charges should be **GRANTED** with leave to amend.  Defendant Garcia's Motion to Dismiss based on qualified immunity should be **DENIED** without prejudice as premature for the procedural due process and equal

protection claims, but **GRANTED** for any substantive due process contention.

Finally, the Motion to Dismiss Clay's state negligence causes of action against all of the Defendants should be **GRANTED**.  The district court should give Plaintiff leave to amend to plead compliance with the Government Tort Claims Act.  Therefore, Defendants Savala and Garcia's request to dismiss the state negligence on discretionary immunity grounds should be **DENIED** without prejudice as premature.

As discussed previously, the Defendants have not specifically moved to dismiss Clay's remaining constitutional violation allegations and have not provided the Court with substantive arguments outlining the basis for their dismissal.

This Report and Recommendation will be submitted to the United States District Court judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before November 21, 2011.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before December 9, 2011.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 21, 2011

Ruben B. Brooks
United States Magistrate Judge

39

cc:   Judge Anthony J. Battaglia
      All Parties of Record